■ RODIN PROPERTIES—SHORE MALL, N.V., Respondent, v LEO ULLMAN et al., Appellants, et al., Defendants. [676 NYS2d 594] —Orders, Supreme Court, New York County (Beatrice Shainswit, J.), entered April 4, 1997, April 9, 1997 and January 27, 1998, which, *inter alia*, denied the motions of defendants Reid & Priest and Leo Ullman to dismiss the original and amended complaints, unanimously affirmed, without costs.

In this action by plaintiff, a Dutch corporation that loaned the non-appearing defendant limited partnership, Shore Mall Associates, $49,125,000 to build a shopping mall near Atlantic City, defendant law firm, which represented plaintiff in the deal, and defendant Ullman, one of its former partners who is alleged to have also been an officer of one of the general partners in Shore Mall, seek dismissal of plaintiff's action for fraud, breach of contract, breach of fiduciary duty and legal malpractice on the ground of prematurity. They contend that because the subject 10-year loan does not mature until December 1999, there is currently no way to determine whether or how much plaintiff will ultimately lose if Shore Mall defaults

on the loan, which is secured by the underlying mortgage for which plaintiff has no recourse against Shore Mall for any deficiency. As found by the IAS Court, the allegations of injury and proximate cause are sufficient. As to defendant's claim that there currently is no way to determine how much plaintiff will ultimately lose if this deal goes bad, we find that if plaintiff's allegations are borne out, plaintiff has already been damaged by having been induced to make the loan to Shore Mall based on a fraudulently inflated appraisal and cash flow projection. As a result of this and other deficiencies, breaches of fiduciary duty and negligence in defendants' representation of plaintiff, plaintiff should be able to establish that it would not have made a loan of as much as $49,125,000, or any loan for that matter, if it had known the true appraisal or cash-flow figures. Moreover, Shore Mall, which is presently obliged to make interest payments only to the extent that it has adequate cash flow, has failed to make those payments because its cash flow, which was projected to exceed $5 million a year, has averaged only $2.8 million. Although the loan agreement provides that such unpaid interest payments will be due at the maturity of the loan, the amount of unpaid interest already past due is readily computed. Concur—Williams, J. P., Tom, Mazzarelli and Andrias, JJ.